UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WILLIAM WALSH :
: CA 08 116 ML
VS. :
:
:
PITNEY BOWES, INC. :

COMPLAINT

1. The plaintiff, William Walsh, is a resident of the Town of Cumberland, State of Rhode Island.

2. The defendant, Pitney Bowes, Inc, is a foreign corporation with a principal place of business in Stamford, Connecticut and authorized to do business in the State of Rhode Island (herein after referred to as "Pitney Bowes").

3. In 2001, the plaintiff was hired by Ibis Consulting, Inc. (herein after referred to as "Ibis"), an electronic discovery services provider as a Business Development Executive. In this capacity the plaintiff was assigned target accounts for selling activity and paid a base salary and commissions based on the company sales commission plan for Business Development Executives.

4. In December 2003, the plaintiff was promoted to Director, Business Development and offered a new compensation plan that included a base salary with a commission component that varied based on the timing of the relationship established with the client.

5. The compensation plan referred to above is set forth in a letter from Pia L. Potter to the plaintiff dated December 18, 2003, a copy of which is hereunto annexed as Exhibit 1.

6. Over the next several years, the plaintiff hired and trained a sales team, grew the Ibis client base, refined and developed the contractual structures, pricing, and market strategies.

7. On or about December 2004 the plaintiff was promoted to Vice President, Business Development with the same salary and commission structure.

8. During this period of time Ibis chose to map sales personnel and accounts that had been previously classified as house accounts under the plaintiff's management oversight. When this occurred those accounts were then added to the plaintiff's compensation plan.

9. In early 2006, Ibis was acquired by Pitney Bowes and Ibis was integrated under the Pitney Bowes Management Services, Legal Solutions division (hereinafter referred to as "PBLS"). As part of the transition Mr. Walsh continued in the same position and continued with the same compensation plan he had with Ibis.

10. The plaintiff's position and compensation plan remained largely unchanged until July of 2007 when he was approached by David Hutchinson (hereinafter referred to as "Hutchinson"), President of PBLS and asked to take on the additional responsibilities of managing the retail sales organization of the division.

11. To induce plaintiff to take the aforementioned management position Hutchinson made very specific commitments and set specific expectations for this position. These commitments included Hutchinson stating that he wanted the plaintiff to consider a more senior position of Vice President Sales for PBLS that would include the entire division sales force. Hutchinson specifically stated that he would interview the plaintiff for this position and hoped that he would pursue the position.

12. Hutchinson further told the plaintiff that this was an expanded role. This was reconfirmed when two days later, after terminating the employment of the former President of Ibis; Hutchinson approached the plaintiff and told him he would be the visible leader of the Providence employee base. At that same meeting, Hutchinson reconfirmed his interest in the plaintiff as a candidate for the more senior sales position.

13. Based on the representations of Hutchinson the plaintiff immediately embraced the expanded role and began the process of integrating the new sales force into his organization and making the changes necessary to improve the processes and performance of the sales force.

14. However, the commitments made by Hutchinson to plaintiff proved to be untrue in that the position Hutchinson convinced the plaintiff to take on was in essence a demotion; the plaintiff was never considered a candidate for the more senior sales position; and the plaintiff was stripped of some key responsibilities (e.g., pricing decisions).

15. Subsequently, PBLS announced plaintiff's demotion from the position of Vice President to a position of Director and the fact that the plaintiff was now reporting to the Vice President Sales PBLS.

16. By reason of defendant's breach of its representations, plaintiff advised Vice President Sales PBLS on September 14, 2007 of his resignation.

17. Subsequent to this letter of resignation and prior to his departure, the plaintiff worked closely with Vice President Sales PBLS to support the transition of his responsibilities and move forward much of the process improvements he had been implementing for his expanded sales team.

18. During his last few weeks of employment the plaintiff met with local human resources personnel of defendants to discuss exiting the company and clearly laid out the company's obligation to him regarding his compensation plan.

19. Upon information and belief defendant Pitney Bowes after debating through email correspondence, if anyone at Pitney Bowes had an understanding of plaintiff's compensation plan, asked the plaintiff for further guidance and definition of his compensation structure which he provided.

20. The plaintiff requested updates on his compensation payout on several occasions during the weeks following his September 14th letter and each time was told it was being addressed and worked through with Finance.

21. On October 12, 2007 (12 days after plaintiff's departure) a Pitney Bowes Vice President for Human Recourses emailed plaintiff with an outline of what the company was paying the plaintiff. The plaintiff immediately contacted the Pitney Bowes Vice President for Human Recourses and advised her that this was unacceptable and not in accordance with his commission structure.

22. As a direct result of the breach of its representations and its breach of plaintiff's salary and commission agreement, the defendant Pitney Bowes, Inc is obligated to the plaintiff as follows:

a. Pursuant to plaintiff's commission plan, payment on all open Ibis accounts receivable;

b. Pursuant to plaintiff's commission plan, payment on revenue associated with Ibis' project work billed as a result of plaintiff's position with defendant;

c. Pursuant to plaintiff's commission plan, payment on revenue generated from the retail sales of the Compulit division of Pitney Bowes that Plaintiff managed from July 2007 through September 2007.

d. By reason of the plaintiff's change in position which led to his forced resignation and constructive discharge compensation consistent with the average of his 2006 full year and 2007 (pro-rated) average annual compensation for a reasonable period of time following his termination;

e. Such other and further relief as this Honorable Court shall deem fit to grant.

23. The amount in controversy is sufficient to establish jurisdiction of this Honorable Court.

WHEREFORE, plaintiff, William Walsh, demands judgment against defendant Pitney Bowes, Inc, in an amount sufficient to vest exclusive jurisdiction with this Court, plus interest, costs, attorney fees and such other and further relief as this Honorable Court shall deem fit to grant.

CARROLL, KELLY & MURPHY

C. RUSSELL BENGTSON #1233
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile
rbengtson@ckmlaw.com

Plaintiff hereby claims trial by jury.

CARROLL, KELLY & MURPHY

C. RUSSELL BENGTSON #1233
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile
rbengtson@ckmlaw.com

Dated: March 28, 2008